IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAQUITA A. CRAWFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-1333 |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

O R D E R

AND NOW, this 29th day of September, 2021, upon consideration of Defendant's

Motion for Summary Judgment (Doc. No. 17) filed in the above-captioned matter on June 14,

2021,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No.

15) filed in the above-captioned matter on May 11, 2021,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN

PART.  Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the

Commissioner of Social Security ("Commissioner") for further evaluation as set forth below and

denied in all other respects.  Accordingly, this matter is hereby remanded to the Commissioner

for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

I.      **Background**

Plaintiff Jaquita Crawford protectively filed a claim for Disability Insurance Benefits

under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, effective October 25,

2017, claiming that she became disabled on that date due to bipolar disorder, paranoia, and back and knee pain.  (R. 10, 141-47, 173).  After being denied initially on May 1, 2018, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on September 17, 2019.  (R. 10, 31-54, 71-75, 77-79).  In a decision dated October 23, 2019, the ALJ denied Plaintiff's request for benefits.  (R. 10-20).  The Appeals Council declined to review the ALJ's decision on August 7, 2020.  (R. 1-3).  Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II.    <u>Standard of Review</u>

Judicial review of a social security case is based upon the pleadings and the transcript of the record, and the scope of that review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact.  *See* 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting § 405(g)); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence).  If the district court finds this to be so, it must uphold the Commissioner's final decision.  *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  The Court may not set aside a decision that is supported by substantial evidence "even if [it] would have decided the factual inquiry differently."  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing § 405(g)); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

"Substantial evidence" is defined as "more than a mere scintilla." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  "'Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.'" *Id.*  So as to facilitate the district court's review, an ALJ's findings must "be accompanied by a clear and satisfactory explication of the basis on which [they] rest[]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  Decisions that are conclusory in their findings or indicate the ALJ's failure to consider all the evidence are not supported by substantial evidence. *See id.* at 705-06.  Moreover, the Court must ensure the ALJ did not "reject evidence for no reason or for the wrong reason." *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. *See Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001).  "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" *Id.* at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process in guiding ALJs in determining whether a claimant is under a disability as defined by the Act. *See* 20 C.F.R. § 404.1520. At Step One, the ALJ must determine whether the claimant is currently engaging in substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(i). If so, the disability claim will be denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. *See* 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522. If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the ALJ must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

In considering these steps, the ALJ must formulate the claimant's residual functional capacity ("RFC"). A claimant's RFC is defined as the most that an individual is still able to do despite the limitations caused by his or her impairments. *See Fargnoli*, 247 F.3d at 40; 20 C.F.R. § 404.1545(a). At Step Four, it is the claimant's burden of demonstrating an inability to perform his or her past relevant work. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). If the ALJ determines that the claimant lacks the RFC to resume his or her former occupation, the evaluation then moves to the fifth and final step. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. *See* 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the ALJ must consider the claimant's RFC, age, education, and past work experience. *See id.* The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. *See* 20 C.F.R. § 404.1523.

## III.   The ALJ's Decision

In his October 23, 2019 decision, the ALJ found that Plaintiff met the insured requirements of the Act through December 31, 2021. (R. 12). The ALJ then proceeded to apply the sequential evaluation process when reviewing Plaintiff's claim for benefits. In particular, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date of October 25, 2017. (*Id.*). The ALJ found that Plaintiff met the second requirement of the process insofar as she had the severe impairment of polyarthritis. (R. 12-13). However, the ALJ found that Plaintiff's alleged mental health conditions did not qualify as severe impairments. In so finding, he found unpersuasive four medical source opinions, each of which recognized Plaintiff's diagnosis of several mental health conditions, including major depressive disorder, anxiety disorder, post-traumatic stress disorder ("PTSD'), and attention deficit hyperactivity disorder ("ADHD."), and all of which expressed the opinion that Plaintiff had moderate to extreme limitations in several aspects of her mental functional capacity. (R. 13-16).

The ALJ concluded that Plaintiff's impairment of polyarthritis did not meet any of the listings that would satisfy Step Three (R. 16), and therefore proceeded to determine Plaintiff's RFC, finding that Plaintiff retained the RFC to perform a full range of medium light work, but

with no non-exertional limitations.  (R. 17-19).  The ALJ relied on the testimony of a vocational

expert ("VE") that Plaintiff's prior job as a home health aide was generally performed at the

medium exertional level (R. 51) in determining that Plaintiff was capable of performing her past

relevant work at Step Four of the process.  (R. 19-20).  In the alternative, he found that jobs

existed in significant numbers in the national economy that Plaintiff could perform based on the

Medical-Vocations Guidelines, 20 C.F.R. Part 404, Subpart P, App. 2.  (R. 19-20).  Accordingly,

the ALJ found that Plaintiff was not disabled.  (R. 20).

## IV.   **Legal Analysis**

The record in this case is unusual.  Plaintiff's medical records contain several references

that she had weekly treatment sessions for her mental health conditions.  (R. 220, 225, 326).

She told both consultative examiners in this case that she had been seeing her therapist once or

twice a week and her psychiatrist once a month for several years.  (R. 237, 255).[1]  Two of the

medical professionals with whom Plaintiff has treated indicated in their opinions that they saw

her at last once a week for several years.  (R. 301, 304).  And yet, as the ALJ pointed out, the

record contains very little evidence documenting any such treatment, and nothing that would

suggest treatment as often as Plaintiff and her medical sources have represented.  However, the

amount of evidence suggesting a greater level of treatment than is reflected in the medical

records makes it unclear whether Plaintiff's claims regarding her treatment was actually

inconsistent with the record, or whether the record was incomplete in this regard.  Given the

importance of this issue, and given the nature of the allegations in this case, the Court will

remand this case for a fuller development of the record regarding the amount of treatment

Plaintiff has received for her mental health conditions and the nature of that treatment.

---

[1]     As the Court will further discuss below, the ALJ misconstrued Plaintiff's statement to the
consultative examiner in the decision.

As noted above, the ALJ found unpersuasive four separate opinions that clearly indicated that Plaintiff suffered from fairly serious mental health impairments – those of consultative examiner Chantal Deines, Pys.D. (R. 254-62), state reviewing agent Michelle Santilli, Psy. D. (R. 56-70), treating nurse practitioner Joann Chmieleinski (R. 302-04), and treating therapist Heather Filby-Salazar (R. 299-301). All four opined that Plaintiff would be substantially limited in her functional capacity based on her mental health conditions, which included major depressive disorder, anxiety disorder, PTSD, and ADHD. Indeed, Ms. Filby-Salazar stated that Plaintiff would have numerous extreme limitations (R. 299-300), and Dr. Deines and CRNP Chmieleinski found several marked limitations. (R. 260, 302-03).

A common thread in the ALJ's reasoning in disregarding each of these opinions was that the records reflected only minimal mental health treatment with relatively unremarkable clinical findings. (R. 14-15). He noted that although CRNP Chmieleinski and Ms. Filby-Salazar indicated in their assessments that they had been treating Plaintiff approximately once a week for several years, the medical records in evidence documented only a few visits. (R. 15). He also recognized that, despite Plaintiff's claims of weekly therapy and medication, "the records in evidence do not document much of this." (R. 14). Therefore, in large part on the basis of what he characterized as Plaintiff's minimal treatment, the ALJ found all of these opinions to be unpersuasive, and relying on the admittedly sparce evidence of Plaintiff's actual treatment, he found, at Step Two of the sequential analysis, that Plaintiff's mental health conditions did not constitute severe impairments. (R. 13-16). He likewise included no restrictions in the RFC to account for any mental conditions. (R. 17).

Accordingly, the ALJ was aware of, and discussed, the apparent dichotomy between statements reporting regular weekly treatment and objective medical records failing to document

this treatment.  Knowing about this inconsistency, he nonetheless proceeded to identify Plaintiff's treatment as minimal and relied heavily on this finding in disregarding four fairly consistent opinions demonstrating functional limitations caused by Plaintiff's mental health conditions.  This would seem to indicate that he treated the medical records at face value and found that they accurately reflected Plaintiff's treatment history, which he found to be slight.  Certainly, in some circumstances, a record devoid of proof of sustained treatment could be considered in finding a claimant's assertion to the contrary to be inconsistent with the record.  Here however, it is not clear whether the inconsistency demonstrates an issue with Plaintiff's claims or that the record is simply incomplete or inaccurate.  As such, it is possible that the ALJ's review of these opinions under 20 C.F.R. § 404.1520c was based on a faulty assumption regarding the nature of Plaintiff's treatment. Based on the significant evidence that could support either of these findings, the Court believes remand is needed for a more focused consideration of this issue.

As noted above, Plaintiff's medical records, as sparce as they may be, indicate that she was at least scheduled to receive treatment for her mental conditions more than once a week, and CRNP Chmieleinski and Ms. Filby-Salazar, in their opinions, stated that they had, in fact, been seeing Plaintiff that often for several years.  Further, although the ALJ incorrectly noted that Plaintiff told Dr. Deines, the consultative examiner, that she received treatment only once or twice a year (R. 13), Plaintiff actually told Dr. Deines, as well as the other consultative examiner, Alexandra Smith-Demain, M.D., that she was treated once or twice a week, consistent with the representations elsewhere in the record.  (R. 237, 255).  There is, in other words, quite a bit of evidence in the record suggesting far more treatment than the record actually reflects.  This creates a situation where it is not clear whether the record reflects inconsistency in Plaintiff's

representations regarding her level of treatment, or that the record is incomplete in the sense that it does not document the full extent of Plaintiff's treatment.

The Court emphasizes that it is, of course, Plaintiff's burden to supply evidence in support of her claim, but the ALJ also has a duty to develop a full and fair record.  *See Ventura*, 55 F.3d at 902; *Money v. Barnhart*, 91 Fed. Appx. 210, 215 (3d Cir. 2004) (citing *Bowen*, 482 U.S. at 146 n.5)).  The ALJ's finding regarding Plaintiff's sparce treatment record was an important part of his rationale in rejecting four relatively consistent medical opinions.  Moreover, in doing so, the ALJ declined to find that Plaintiff had *any* severe mental impairments.  In order to meet the Step Two severity test, an impairment need only cause a slight abnormality that has no more than a minimal effect on the ability to do basic work activities.  *See* S.S.R. 85-28, 1985 WL 56856 (S.S.A.); 20 C.F.R. § 404.1522.  The Third Circuit Court of Appeals has explained that Step Two is a *de minimus* screening device to dispose of groundless claims.  *See Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003); *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).  The fact that the ALJ found Plaintiff's diagnosed major depressive disorder, anxiety disorder, PTSD, and ADHD did not meet this lenient standard implies that he found the lack of documentation of regular treatment in the record to be proof of a lack of such treatment.  As the Court has discussed, it is unclear if the record actually supports such a finding.  Moreover, even to the extent that the ALJ accepted the evidence that Plaintiff attended weekly therapy sessions, he apparently discounted it to the point of finding that Plaintiff's mental health conditions did not constitute severe impairments based on little or no evidence as to the nature of the treatment provided at those sessions and the findings made in connection therewith.[2]

---

[2]     The Court further notes that the ALJ's mischaracterization of Plaintiff's statement to Dr. Deines, *i.e.*, that she attended therapy once or twice a year rather than once or twice a month (R. 13), makes it ambiguous as to whether the ALJ did or did not accept that Plaintiff received mental health treatment on a weekly basis.

The Court acknowledges that there may be no more evidence.  Indeed, the record does suggest that Plaintiff may not have always complied with her treatment plan.[3]  (R. 225-29).  If this is the case, and the inconsistency in the record remains, it will be up to the ALJ to determine how to weigh the evidence and account for Plaintiff's mental health treatment.  He may come to the same conclusion.  However, the Court finds that there is enough evidence supporting the possibility of an incomplete (or possibly misleading) record that further examination of the issue is warranted.  The Court leaves to the ALJ how best to do this, but emphasizes that he has a number of options at his disposal, such as seeking clarification from Plaintiff's treating mental health providers, requesting additional evidence, or asking for additional information.  *See* 20 C.F.R. § 1520b(b).

## V.   <u>Conclusion</u>

Accordingly, for the reasons stated herein, the Court remands this matter for further consideration and/or development of the record consistent with this Order.

<u>s/Alan N. Bloch</u>
United States District Judge

ecf:          Counsel of record

---

[3]      The Court further notes that given the nature and alleged severity of Plaintiff's diagnosed mental health conditions, a lack of treatment may or may not be indicative of less serious symptoms.  It is important to note that, in general, an ALJ must not "find an individual's symptoms inconsistent with the evidence in the record on [the basis of non-compliance with treatment] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."  S.S.R. 16-3p, 2017 WL 518880304 (S.S.A.) at *9.  *See also Fahy v. Astrue*, No. 06-CV-366, 2008 WL 2550594, at *7 (E.D. Pa. June 26, 2008).  Valid alternative reasons can include where a claimant's mental impairments prevent him or her from understanding "the appropriate treatment for or the need for consistent treatment of his or her impairment" or from being "aware that he or she has a disorder that requires treatment."  S.S.R. 16-3p at *10.  No such analysis was performed here.